1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

ARMANDO SAMUEL CORDOVA,

CASE NO. 10cv799-LAB (AJB)

12

Plaintiff,

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND**

vs.

13

14

DOMINGO URIBE, JR., warden, et al.,

**ORDER DENYING AS MOOT MOTIONS TO EXPEDITE AND TO APPOINT COUNSEL**

15

Defendant.

16

17        Petitioner Armondo Samuel Cordova was convicted in California state court of two

18 counts of second degree murder, one count of attempted voluntary manslaughter, and two

19 counts of assault with a firearm, and he was sentenced to 107 years to life, plus ten years

20 in state prison. After denial of his direct appeals in state court, Cordova filed his petition in

21 this Court. The petition was referred to Magistrate Judge Anthony Battaglia for report and

22 recommendation pursuant to 28 U.S.C. § 636. Judge Battaglia, based on the parties'

23 answer, traverse, and response to the petition, issued his report and recommendation (the

24 "R&R," Docket no. 20), recommending denial of the petition. Cordova filed objections to the

25 R&R.

26 **I.        Legal Standards**

27        A district court has jurisdiction to review a Magistrate Judge's report and

28 recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must

1   determine de novo any part of the magistrate judge's disposition that has been properly
2   objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the
3   findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The
4   Court reviews *de novo* those portions of the R&R to which specific written objection is made.
5   United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute
6   makes it clear that the district judge must review the magistrate judge's findings and
7   recommendations de novo *if objection is made*, but not otherwise." *Id*.

8       Under 42 U.S.C. § 2254, state courts are intended to be the principal forum for
9   litigating constitutional challenges to state convictions. *Harrington v. Richter*, 131 S.Ct. 770,
10  787 (2011). "A state court's determination that a claim lacks merit precludes federal habeas
11  relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
12  decision." *Id*. at 778 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal
13  habeas review is a " 'guard against extreme malfunctions in the state criminal justice
14  systems,' not a substitute for ordinary error correction through appeal." *Id*. at 786 (quoting
15  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)).

16      A federal writ of habeas corpus is not available to correct errors of state law.
17  *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011). And an error of state law is not a denial of
18  due process. *Id*. at 863 (citation omitted).

19  **II.   Discussion**

20      Cordova agrees that the R&R's recitation of facts and procedural history is correct.
21  (Obj. to R&R, 1:25–28.) He instead focuses on legal arguments, reiterating arguments he
22  raised in state court and in his petition. The Court therefore **ADOPTS** the R&R's factual and
23  procedural recitations and does not repeat them here except as needed when referring to
24  them.

25      The bone of contention is a corrected instruction the trial court gave jurors after they
26  were already deliberating. Cordova argues, as he did in state court, that the original
27  instruction was correct and that the new instruction misstated state law, and allowed jurors
28  to convict him of second degree murder even if there was reasonable doubt about whether

1    he was unconscious because he was in an alcoholic blackout.

2    **A.    When the Jury Convicted Cordova**

3    Cordova argues that the jury acquitted him of first degree murder but convicted him

4    of second degree murder for the killing of Kristopher Ebbert. (Obj. to R&R at 3:1–4.) His

5    objections say that the conviction took place on March 12, implying that the trial court, after

6    hearing the verdict, decided to reinstruct the jury.  Cordova has misread the record, however.

7    The jury did not convict him March 12, but on March 14, after being reinstructed.

8    Cordova cites a verdict form dated March 12, 2007 but recorded on March 14, 2007.

9    (Lodgment 2 at 289.) The jury apparently finished deliberating on that count on March 12,

10   the foreperson completed the form on that date, and the jury went on to deliberate on other

11   counts.  But the record is clear that all verdicts including the one Cordova now points out

12   were announced and recorded on March 14 and none on March 12. (*See* Lodgment 2 at

13   457–62 (minutes).)

14   **B.    What Prompted the Trial Court's Reinstruction**

15   Cordova's petition repeated an argument his counsel made in state court, namely,

16   that the trial court gave the corrected instruction in response to jurors' questions. (*See* Pet

17   at 6 (citing Attachment "A").)  This contradicts the state court's findings, and the record. The

18   record is clear that the trial court first instructed jurors on March 8, 2007. Those original

19   instructions included CALCRIM Nos. 625, 626, 627, 3425, 3426, and 3428, all of which

20   concerned mental state. CALCRIM No. 3425 informed jurors that unconsciousness could

21   be caused by, among other things, alcoholic blackout.

22   On March 9, the jury sent the trial court a question: "Can a person in an alcoholic

23   blackout [be] considered conscious[ ] or unconscious[ ] by law?" (*See* Lodgment 2 at 281.)

24   After hearing argument, the trial court in response wrote that same day to the jurors, "Please

25   review the following instructions: 3425, 3426, 3428, 625, 626, and 627." (*Id*. at 282.) On

26   March 12, the government moved to correct CALCRIM No. 3425. The trial court heard

27   argument, withdrew that instruction, and, on March 13, reinstructed the jury. The corrected

28   version of the instruction distinguished other types of blackouts from alcoholic blackouts, and

1   the Court directed the jury to consider this instruction in connection with CALCRIM No. 626,

2   which addresses voluntary intoxication, as well as all other previously given instructions.

3       Cordova now argues that the corrected version of CALCRIM No. 3425 was given as

4   answer to the jury's question. In fact, the record shows that although the trial court was

5   considering the jury note in order to decide whether the jury was confused (*see* Lodgment

6   1 at 1971:21–23, 1982:18–20 1984:21–24), it was in fact reinstructing the jury in response

7   to a government motion. (*Id*. at 1981:15–17, 1983:21–24, 1985:24–27.) This is also borne

8   out by the fact that the trial court initially answered the question, and only several days later

9   reinstructed the jury.  In other words, the trial court was not attempting to answer the jury's

10   question; it was attempting to clarify the overall instructions in response to a motion by the

11   government. In its effort to do so, it was guided in part by the jury's question, which it thought

12   evinced confusion over CALCRIM No. 3425.

13       The R&R discusses the legal effect of unconsciousness resulting from an alcoholic

14   blackout (as opposed to a blackout caused by something else, such as a psychological

15   disorder). (R&R, 10:8–20.) The Court finds the R&R's discussion to be correct. The initial

16   instructions were more favorable to Cordova, suggesting that any unconsciousness might

17   be a complete defense.   The corrected instructions correctly told the jury that

18   unconsciousness caused by something other than an alcoholic blackout is a complete

19   defense to a criminal charge, while unconsciousness caused by voluntary intoxication is not

20   a complete defense and can only negate specific intent. *See People v. Abilez*, 41 Cal.4th

21   472, 516 (2007).

22       The California court of appeals discussed the instructions as a whole and determined

23   that they correctly set forth state law. (Lodgment 6 at 13–15.) This was not a case where the

24   state court found an error or misstatement of law and was considering whether it was

25   harmless; rather, the state court found the jury instructions correctly apprised the jury of the

26   legal standards to be applied.

27       Cordova's argument that the trial court's reinstruction was a wrong or misleading

28   answer to the jury's question is therefore contradicted by the record.

### C.    Unexhausted Issues

The Court issued a notice cautioning Cordova that he might not have exhausted all issues, and that he was required to exhaust all claims in state court before raising them on federal habeas review. Cordova now raises a new issue, not raised before the state supreme court, that his conviction for one count of second degree murder on March 12, 2007—the day before the corrected instruction was given—was tainted. (Obj. to R&R, 3:1–22.) His argument, essentially, is that if the government was correct that CALCRIM No. 3425 was flawed, the jury's decision, made before the instruction was corrected, is suspect and should be set aside. Because this claim was not raised before the state supreme court, it is waived and is not a valid objection to the R&R.

Furthermore, it is not only nonmeritorious, but actually harms his position, which probably explains his counsel's failure to raise it below. Even if the factual assertions underlying Cordova's argument are accepted as true, all it shows is that the jury convicted him even under the standard more favorable to him. If anything, this suggests that the reinstruction made no difference, since the jury was prepared to find he was conscious during the murders and did not believe his argument that he was unconscious due to an alcoholic blackout.

Cordova also argues the trial court refused to instruct the jury on the defense theory of the case, even though it was supported by evidence. It is not clear what instruction he thinks should have been given, but this was not raised in his brief to the California supreme court, and is unexhausted. He cannot raise it now for the first time.

### D.    Cordova's Objections

To the extent Cordova is basing his arguments on the dates he supposes the jury returned its verdicts, the record shows he is mistaken, and his objections are **OVERRULED**.

The standard of review drives the outcome here. As discussed above, the California courts' own determination of what state law requires cannot form a basis for federal habeas relief. The question of federal law as presented to the state courts was whether, under the circumstances as a whole and given the evidence in the case, the instructions rendered the

1   trial so fundamentally unfair as to violate due process. *Duckett v. Godinez*, 67 F.3d 736, 746

2   (9th Cir. 1995) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The state appellate court

3   considered Cordova's arguments, and decided the instructions as a whole not only did not

4   misstate the law, but were affirmatively correct. (Lodgment 6 at 13–15.) The state courts'

5   adjudication of issues of state law is unreviewable and can form no basis for habeas relief.

6   *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that court of appeals erred in

7   relying on its conclusion that evidence was incorrectly admitted pursuant to California law,

8   because "[s]uch an inquiry . . . is no part of a federal court's habeas review of state

9   conviction").  To the extent this decision was based in part on factual determinations, such

10  as the evidence presented or other events at trial, it falls far short of the standard for

11  unreasonableness. *See Taylor v. Maddox,* 366 F.3d 992, 999–1001 (9th Cir. 2004)

12  (discussing unreasonableness standard, and deference due to state court determinations).

13         The California supreme court's determination that the jury was adequately instructed

14  was not unreasonable nor did it violate clearly established federal law. Cordova's objections

15  to the R&R are therefore **OVERRULED**.

## III.    Other Motions

17         After filing his objections, Cordova also filed motions to expedite his petition, and for

18  appointment of counsel. Because the Court is denying his petition, the motion to expedite

19  is moot. Because no further briefing remains to be filed, his motion for appointment of

20  counsel is also moot.

## IV.    Conclusion and Order

22         For the reasons set forth above, Cordova's objections to the R&R are **OVERRULED**.

23  The R&R is **ADOPTED** and the petition is **DENIED**. Cordova's motions to expedite and to

24  appoint counsel are **DENIED AS MOOT**. All other pending motions are **DENIED AS MOOT**.

25  / / /

26  / / /

27  / / /

28  / / /

10cv799

The Court **DENIES** a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED**.

DATED:  March 20, 2013

**HONORABLE LARRY ALAN BURNS**
United States District Judge

10cv799